## UNITED STATES v. CONSOLIDATED ROCK PRODUCTS CO.

### Nos. 10784, 10785.

Circuit Court of Appeals, Ninth Circuit

Nov. 9, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson and Mary Helen Wigle, Sp. Assts. to Atty. Gen., and Charles H. Carr, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Latham & Watkins, of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

At all pertinent times appellee, Consolidated Rock Products Company, a Delaware corporation, had its principal place of business in Los Angeles, California, and was there engaged in the business of producing and selling sand, rock, gravel and other building materials. In that business appellee used property some of which was owned by, and some of which was leased to, its subsidiaries—Union Rock Company, a Delaware corporation; Reliance Rock Company, a Delaware corporation; Consumers Rock & Gravel Company, Inc., a Delaware corporation; Builders Crushed Rock Products Company, a California corporation; Sunset Rock Products Company, Inc., a California corporation; Union Rock Land Company, a California corporation; and Atlas Mixed Mortar Company, a California corporation. The right to use such property was granted to appellee by its subsidiaries in and by agreements called operating agreements,[1] all of which were made before May 24, 1935.

On May 24, 1935, appellee filed with the District Court of the United States for the Southern District of California a petition under § 77B of the Bankruptcy Act, as added by § 1 of the Act of June 7, 1934, c. 424, 48 Stat. 912, 11 U.S.C.A. § 207.[2] Thereupon, on May 24, 1935, a judge of the court entered an order approving the peti-

---

[1] Appellee made five operating agreements—one with Union Rock Company, Reliance Rock Company and Consumers Rock & Gravel Company, Inc., one with Builders Crushed Rock Products Company, one with Sunset Rock Products Company, Inc., one with Union Rock Land Company and one with Atlas Mixed Mortar Company. The three first mentioned were written agreements. The other two were not.

[2] Since the filing of appellee's petition, § 77B has been amended and, as amended,

tion as properly filed, continuing appellee in possession of its property and authorizing it to operate its business and to have all the title and exercise all the powers of a trustee, subject to the control of the court. Accordingly, after the petition was filed and approved, appellee continued to operate its business and, in connection therewith, continued to use property owned by and property leased to its subsidiaries.

In its income tax return for 1938, appellee reported gross income of $1,159,388.88 and claimed deductions aggregating $1,264,-921.02. Thus, instead of net income, the return showed a net loss of $105,532.14. Appellee accordingly paid no income tax for 1938.

The deductions claimed by appellee included items representing depreciation and depletion of its subsidiaries' property and amortization of its subsidiaries' leaseholds. Appellee claimed that these were deductible as business expenses. The Commissioner of Internal Revenue disallowed these items and determined that appellee's allowable deductions aggregated only $1,007,122.58, and that therefore it had net income of $152,266.30 and owed a tax of $25,112.-72. Accordingly, on November 28, 1941, the Commissioner assessed $29,184.42 ($25,-112.72, plus interest to November 28, 1941) against appellee.

On March 10, 1942, appellant, the United States, filed in the bankruptcy proceeding[3] a claim for the $29,184.42, with interest. Appellee opposed the claim. The court, after a hearing, stated its findings and conclusions and, on October 30, 1943, entered an order declaring that, in computing its net income for 1938, appellee was entitled to deduct as expenses "the depreciation, depletion and amortization of leaseholds sustained by [its subsidiaries], the properties of which were used and operated during said calendar year 1938 by [appellee] in connection with its business;" directing that the amount of such deductions be determined by the parties (appellant and appellee) by agreement, if possible; and stating that, if the parties did not agree within a reasonable time, a further hearing would be had for the purpose of making such determination.

No agreement having been reached, a further hearing was had, and supplemental findings and conclusions were stated. Thereby it was determined that the amount which appellee was entitled to deduct on account of depreciation of its subsidiaries' property was $64,253.52; that the amount which appellee was entitled to deduct on account of depletion of its subsidiaries' property was $7,747.32; that the amount which appellee was entitled to deduct on account of amortization of its subsidiaries' leaseholds was $6,538.46; and that appellee had in 1938 net income of $3,036.02[4] and hence owed a tax of $379.50. Accordingly, on April 24, 1944, the court entered judgment allowing appellant's claim in the sum of $441.17 ($379.50, plus interest to November 28, 1941), with interest from November 29, 1941.

Two appeals were taken—one (No. 10,874) from the order of October 30, 1943, and one (No. 10,785) from the judgment of April 24, 1944. The appeals were consolidated. The question presented is whether the court erred in holding that appellee was entitled to deduct, as business expenses, amounts representing depreciation and depletion of its subsidiaries' property and amortization of its subsidiaries' leaseholds.

Section 23 of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Code, § 23, provides that, in computing net income, there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

During 1938 appellee had the use, for purposes of its business, of property to which it had not taken and was not taking title, namely, property owned by and prop-

---

[3] The proceeding commenced by appellee on May 24, 1935.

[4] Thus, in effect, it was determined that appellee's allowable deductions aggregated $1,156,352.86—the difference between $1,-159,388.88 and $3,036.02.

erty leased to its subsidiaries. The right to such use was granted by and exercised under and pursuant to the operating agreements mentioned above. The operating agreement between appellee and Union Rock Company, Reliance Rock Company and Consumers Rock & Gravel Company, Inc., provided:

"The Operating Company [appellee] agrees to keep and maintain * * * books and accounts for each of the Owning Companies [Union Rock Company, Reliance Rock Company and Consumers Rock & Gravel Company, Inc.] * * * recording therein proper entries affecting depreciation, depletion, amortization and obsolescence of each of said properties [5] as well as entries recording the transactions between the parties hereto, and other matters properly and customarily stated in books of account * * *.

"The Operating Company hereby undertakes and agrees to bear and pay * * * (a) all maintenance and operating expense of the properties herein referred to * * * and (e) all other operating charges and expenses of the Owning Companies of every sort and nature, including items of depreciation, depletion, amortization and obsolescence, which items (not involving a cash outlay) shall be credited to the current account of the Owning Companies and shall be paid to said Owning Companies as and when provided in Section 14 hereof, and in consideration thereof the Operating Company shall be and it is hereby authorized to retain for its own use and benefit all net revenues from the operation of said properties."

Section 14 provided: "Upon termination of this agreement as to any one or more of said Owning Companies,[6] the possession and custody of the properties of such company or companies * * * shall be revested by the Operating Company in the owner or owners thereof, and in that event a financial adjustment shall be made as between the Operating Company and any such Owning Company or Companies, in accordance with the current account of the parties on date of return of said proper-

ties; and payment shall thereupon be made in accordance therewith."

The operating agreements between appellee and Builders Crushed Rock Products Company, Sunset Rock Products Company, Inc., Union Rock Land Company and Atlas Mixed Mortar Company were substantially similar to the one between appellee and Union Rock Company, Reliance Rock Company and Consumers Rock & Gravel Company, Inc.

All the operating agreements were in effect and were complied with by appellee in 1938.[7] Thus, in 1938, amounts representing depreciation and depletion of its subsidiaries' property and amortization of its subsidiaries' leaseholds were charged to appellee and credited to its subsidiaries, and appellee was obligated to pay these amounts. Such payments were required as a condition to the continued use, for purposes of appellee's business, of the property covered by the agreements—property owned by and property leased to appellee's subsidiaries. Hence such payments were ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business, within the meaning of § 23, supra.

That the payments required of appellee were not made in 1938 is immaterial, for appellee's books were kept and its income tax returns were made on the accrual basis, and its obligation to make these payments accrued in 1938.

Appellant says that in 1938 appellee denied that it owed its subsidiaries the amounts which the operating agreements required it to pay them, and which its own books showed that it owed them—amounts representing depreciation and depletion of their property and amortization of their leaseholds. Appellant therefore contends that appellee's obligation to pay these amounts did not accrue in 1938. The question thus attempted to be raised was not raised in the court below. That court did not find, nor was it asked to find, that appellee denied the obligation mentioned. The records on these appeals contain no

[5] Property owned by and property leased to the "Owning Companies."

[6] The agreement could be terminated by mutual consent or by 30 days' written notice. By giving such notice, any one or more of the "Owning Companies" could withdraw therefrom during the term thereof.

[7] The operating agreement between appellee and Union Rock Company, Reliance Rock Company and Consumers Rock & Gravel Company was made on July 15, 1929. On February 16, 1933, the parties thereto executed a modification thereof, but the modification was immediately rescinded and never became operative.

evidence [8] of any such denial. The contention that appellee's obligation did not accrue in 1938 is therefore rejected.

Appellant contends that the payments required of appellee were contributions to its subsidiaries' capital. There is no merit in this contention. The operating agreements clearly show that the payments were what we have held them to be—payments for the use of property owned by and property leased to appellee's subsidiaries.

Order and judgment affirmed.

[8] In No. 10,784, the evidence consists of a stipulation of facts, 19 exhibits attached to and made part of the stipulation, and testimony given by appellee's witness, Wilbur E. Thain, on November 6, 1942. In No. 10,785, the evidence consists of testimony given by Thain on March 27, 1944. The records on these appeals contain no other evidence.